UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSEVIER, INC.; PEARSON EDUCATION, INC.; CENGAGE LEARNING, INC.; and MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC,<br><br>   Plaintiffs,<br><br> v.<br><br>SIEW YEE CHEW; LYNETTE K. CHEW; KOK KIT LAU; AKITRADE GLOBAL SDN BHD; SHEIN WEI CHOO; YUMI WEE KENG YEE; LEW MOY; LIM SEI HAW; LIAO WEI HAO; JIAO LENG; ZHENG XIAOHONG; LIN ZHEN WEI; LUO ZHIHONG; JEREMY GOULD; VERONICA LEMMONS; BINIAM F. TESFAZGHI; and YAROSLAV STOLYARCHUK,<br><br>   Defendants. | **Civil Action No. 17-cv-6225-JGK-GWG**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR AN ORDER AUTHORIZING ALTERNATIVE SERVICE BY ELECTRONIC MEANS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS .................................................................................................2

    A. Plaintiffs' Businesses and Their Copyrighted Works .......................................2

    B. Defendants' Infringing Activity ........................................................................3

    C. Procedural History ............................................................................................4

ARGUMENT .....................................................................................................................5

    I. Alternate Service by Electronic Means is Appropriate Here .........................5

    A. Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country ..............................................................6

        1. Service of Process by Email is Not Prohibited by International Agreement ...7

        2. Service of Process by Email is Reasonably Calculated to Provide Notice to the Foreign Defendants .........................................................................8

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Broadfoot v. Diaz*, 245 B.R. 713 (Bankr. N.D. Ga. 2000) ......................................................... 9 , 10

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076
(S.D.N.Y. June 12, 2015) ................................................................................................................ 9

*Elcometer, Inc. v. TQC-USA, Inc.,* No. 12-cv-14628, 2013 WL 592660,
2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013) ....................................................... 9-10

*FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037,
2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) ........................................................ 6, 7, 9

*GE Transp. (Shenyang) Co. Ltd. v. A Power Energy Generation Sys. Ltd.*, 15 Civ. 6194 (PAE),
2015 U.S. Dist. LEXIS 158230 (S.D.N.Y. Nov. 23, 2015) ............................................................ 8

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106 (S.D.N.Y. 2010) ....... 6

*McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599,
2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24, 2010) .......................................................... 10

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412,
2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) ........................................................... 6, 8

*Popular Enters., LLC v. Webcom Media Grp., Inc.* 225 F.R.D. 560 (E.D. Tenn. 2004) ............... 10

*Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307,
2010 U.S. Dist. LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) ...................................................... 7, 8, 9

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ............................... 6, 7

*RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068,
2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May 24, 2007) ............................................................... 6

*Sulzar Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ............................. 8

*United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013) ............ 6

*Williams v. Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. Va. 2005) .......................................... 9, 10

**RULES**

Fed. R. Civ. P. 4 ....................................................................................................... *passim*

# TABLE OF AUTHORITIES
# (CONTINUED)

**INTERNATIONAL MATERIALS**

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters ("Hague Convention"), Nov. 15, 1965,
20 U.S.T. 361, 658 U.N.T.S. 163 ................................................................................7, 8

Plaintiffs Cengage Learning, Inc., Elsevier, Inc., McGraw-Hill Global Education Holdings, LLC, and Pearson Education, Inc. (each a "Plaintiff" and, together, the "Plaintiffs"), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in support of their Motion for an Order Authorizing Alternate Service on Defendants Siew Yee Chew, Lynette K. Chew, Kok Kit Lau, Akitrade Global Sdn. Bhd., Shein Wei Choo, Yumi Wee Keng Yee, Lew Moy, Lim Sei Haw, Liao Wei Hao, Jiao Leng, Zheng Xiaohong, Lin Zhen Wei, and Luo Zhihong (each a "Foreign Defendant" and, together, the "Foreign Defendants").

## INTRODUCTION

This is a case brought by some of the nation's largest and most respected publishing houses to address egregious violations of their rights under federal copyright and trademark laws. Defendants operate wholly illegal businesses through which they sell counterfeit textbooks throughout the United States.

The Foreign Defendants are merchants, who are located across the globe, but conduct business in the United States by means of their respective storefronts on eBay and other online marketplaces (the "Storefronts"). Through their Storefronts, the Foreign Defendants sell counterfeit textbooks that infringe Plaintiffs' federally registered copyrights and trademarks. Sellers operating storefronts on online marketplaces, like the Foreign Defendants, often use evasive tactics such as aliases, false addresses, and other incomplete registration information to conceal their identities and evade enforcement. Because the online marketplaces often do not or cannot verify the business or trade names, addresses, or other contact information, sellers, like the Foreign Defendants, use the online marketplaces to sell counterfeit products with almost total anonymity. For these reasons, among others, it is virtually impossible for Plaintiffs to determine on their own the Foreign Defendants' true locations.

The Foreign Defendants conduct their business online, using email as their primary, if not only, form of communication to sell and collect payment for their counterfeit textbooks. Therefore, email is not only an adequate method of providing notice of this lawsuit to the Foreign Defendants, it is the best way to ensure that the Foreign Defendants are aware of Plaintiffs' claims against them and have the opportunity to defend against such claims.

Accordingly, to avoid any further delay in this case, Plaintiffs request an order authorizing service of the First Amended Complaint and summonses on the Foreign Defendants by email.

## STATEMENT OF FACTS

### A. Plaintiffs' Businesses and Their Copyrighted Works.

Plaintiffs are some of the largest and most successful textbook publishers in the United States and throughout the world. First Am. Compl., ECF No. 28 ("FAC") ¶¶ 1, 31. Plaintiffs publish educational books and multimedia materials in all subject areas and grade levels, under a number of well-recognized imprints, with a rich educational and literary heritage. *Id.* at 32. Plaintiffs' textbooks, which they sell to students and others, are among the most popular and widely used titles in their fields. *Id.* Plaintiffs' textbooks are sold in the United States and internationally in retail and online bookstores and marketplaces, including eBay.com. *Id.* at 31.

Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in their respective works set forth on Exhibit A to the First Amended Complaint (the "Authentic Works"). *Id.* at 37. Plaintiffs' Authentic Works also bear their duly registered trademarks and service marks identified on Exhibit B to the Second Amended Complaint ("Plaintiffs' Marks"). *Id.* at 38.

B. **Defendants' Infringing Activity**

Plaintiffs allege that the Foreign Defendants operate a large-scale, complex scheme to purchase and sell counterfeit textbooks that infringe Plaintiffs' copyright and trademark rights ("Counterfeit Textbooks"). *See id.* at ¶¶ 2-3, 45-50. The Foreign Defendants are a group of counterfeiters who control and are doing business as and through multiple seller accounts or online storefronts on eBay.com (the "Online Storefronts"). *Id.* at ¶ 49. After making a sales transaction, eBay sends the proceeds from the sales to one of the Foreign Defendants' affiliated PayPal accounts, at which point PayPal transfers the money to one of the Foreign Defendants' designated bank accounts, all located outside the United States. *Id.* at ¶ 44.

Through their Storefronts, Defendants advertise, offer for sale, and sell unauthorized copies of Plaintiffs' valuable textbooks bearing their federally registered trademarks. *Id.* at 4. Plaintiffs' discovery of Defendants' counterfeiting activities has been challenging and time-consuming. Infringing activity typically takes place behind closed doors. The Defendants here hide behind the anonymity of their Storefronts. *Id.* at 3. Customers receive no information identifying the sellers behind the Storefronts. *Id*.

Some of the Foreign Defendants appear to be working collectively because many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Storefronts offer similar inventories. *Id.* at 49. Moreover, several of the Storefronts—bookbuzzi, bukhstar, modelistajp, and mystarbook—appear to use the same PayPal account. *Id.* Moreover, some of the Foreign Defendants appear to be linked to additional Storefronts that have been named as defendants in an additional pending lawsuit brought by Plaintiffs. Decl. of Kerry M. Mustico ("Mustico Decl."), submitted herewith, ¶ 10.

While the Foreign Defendants often used aliases and fictitious contact information, they provided eBay and PayPal with working email addresses in order to create accounts through which

3

they could sell the Counterfeit Textbooks. *See* FAC ¶ 50. The Foreign Defendants' email addresses correspond to PayPal accounts, which the Foreign Defendants use to receive payment for the Counterfeit Textbooks. *See* Mustico Decl. ¶ 8.

Defendants' counterfeiting scheme has caused Plaintiffs considerable injury. FAC ¶ 34. Among other forms of harm, the sale of the Counterfeit Textbooks displaces legitimate sales and rentals, which represents a substantial portion of Plaintiffs' respective annual revenues. *Id.* at 36. The unauthorized use of Plaintiffs' Marks on counterfeit (and inferior) products also diminishes the goodwill and reputation for the highest quality, which is associated with Plaintiffs' textbooks. *Id.* at 35.

### C. Procedural History

Plaintiffs initiated this lawsuit on August 17, 2017. *See* Compl., ECF No. 1. At the same time that they filed the Complaint, Plaintiffs moved *ex parte* for a temporary restraining order, expedited discovery, and an order to show cause for a preliminary injunction. *See* Ex Parte Order, Aug. 18, 2017, ECF No. 6. Plaintiffs' *ex parte* application was granted, *see id.*, and ultimately the Court issued a preliminary injunction against the Doe Defendants, *see* ECF No. 21.

In accordance with *the Ex Parte* Order and Preliminary Injunction, Plaintiffs served the Complaint, the *Ex Parte* Order, Plaintiffs' *ex parte* Application in support thereof, and the Preliminary Injunction on the Defendants by email to the addresses used by Defendants to operate their Storefronts. *See* Certificates of Service, ECF Nos. 16, 22. Although all emails were successfully delivered to the Doe Defendants, only two Defendants—Jeremy Gould (operating the "greatwhite430" Storefront) and Veronica Lemmons (operating the "marbul-4" Storefront)—responded. Mustico Decl. ¶ 4. Defendants Gould and Lemmons appear to reside in the United States and therefore are not among the Foreign Defendants. FAC ¶¶ 27, 28.

In the meantime, Plaintiffs have pursued expedited discovery as provided in the *Ex Parte*

Order. Plaintiffs served the *Ex Parte* Order and subpoenas on PayPal, Inc. and eBay, Inc. *Id.* at ¶ 3. In December, eBay provided the account information associated with the Storefronts operated by the Foreign Defendants. Through this information, Plaintiffs have determined that Shein Wei Choo, Yumi Wee Keng Yee, Lew Moy, Lim Sei Haw, Lynette K. Chew, Kok Kit Lau, and Akitrade Global Sdn. Bhd. are based out of Malaysia (the "Malaysian Defendants") while "Liao Wei Hao, Jiao Leng, Zheng Xiaohong, Lin Zhen Wei, and Luo Zhihong are based out of China (the "Chinese Defendants"). *Id.* at ¶ 8-9. The records eBay and PayPal produced show that for each of their Online Storefronts, the Foreign Defendants provided multiple and ever-changing physical addresses in their account information. Mustico Decl. ¶ 8. Some of the address information also appears to be incomplete. *Id.* Thus, it is virtually impossible for Plaintiffs to determine the Foreign Defendants true locations. *Id.*

## **ARGUMENT**

### I. ALTERNATE SERVICE BY ELECTRONIC MEANS IS APPROPRIATE HERE

Plaintiffs respectfully ask that the Court grant them permission, pursuant to Federal Rule of Civil Procedure 4(f), to serve the Foreign Defendants by the following alternate means by email to all email addresses identified by eBay and PayPal as associated with or utilized by the Foreign Defendants to conduct the business of the Foreign Defendants' Storefronts. Plaintiffs also propose that the service emails to the Foreign Defendant be sent using an email tracking service such as ReadNotify® to confirm that the emails were delivered successfully.

Though Foreign Defendants have attempted to conceal their whereabouts by hiding behind their Storefronts, there is no doubt that the Foreign Defendants regularly use email for purposes of operating their online business. The Foreign Defendants use email in connection with the Storefronts, to register their accounts and to communicate with eBay and their customers regarding

5

orders received, marketplace fees, payments, and refunds, among other things. Accordingly, email appears to be the best method of providing the Foreign Defendants with actual notice of this suit. Under these circumstances, service of process by email is appropriate.

> A. **Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country.**

Federal Rule of Civil Procedure 4(f)(3) allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Fridman*, No. 06-Civ.-11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision of whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternate service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12-Civ.-7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)); *see also See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013). Indeed, a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15; *PCCare247*, 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *8. Alternative

6

service of process by email is proper where, as here, the proposed method of service is not prohibited by international agreement and the nature of the defendants' business makes it the most likely method of service to provide prompt, actual notice of the plaintiffs' claims. *See Rio Props.*, 284 F.3d at 1018 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process").

### 1. Service of Process by Email is Not Prohibited by International Agreement.

First, given that Malaysia is not a party to Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention"), there is no international agreement barring service of process by email on the Malaysian Defendants. *See* Status Table, Hague Convention, available at: https://www.hcch.net/en/instruments/conventions/status-table/?cid=17. In the absence of an international agreement, the Court must look to Rule 4(f)(3), which allows alternative methods for service of process, so long as the method is directed by the Court and comports with constitutional notions of due process. *See Rio Props.*, 284 F.3d at 1016; *PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *11; *Prediction Co. v. Rajgarhia*, No. 09-Civ.-7459 (SAS), 2010 U.S. Dist. LEXIS 26536, at *3 (S.D.N.Y. Mar. 22, 2010).

Second, while China is a member of the Hague Convention, it does not apply in cases such as that of the Chinese Defendants here. Pursuant to Fed. R. Civ. P (4)(1), service may be affected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by [the Hague Convention]." "Article 10 of the Hague Convention, allows for service of process through alternative means such as 'postal channels' and 'judicial officers,'" provided that the destination state does not object to those means." *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 U.S. Dist. LEXIS 31969, at *10 (S.D.N.Y. Mar. 7, 2013) (citing Hague

7

Convention, November 15, 1965, Article 10). Here, the destination state is China, which, like the U.S., is a signatory to the Hague Convention. Despite China's objection to service by postal channels under Article 10, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement. *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (concluding that "China's objection to service by postal mail does not cover service by e-mail, and these forms of communication differ in relevant respects, such as e-mail communications may be more reliable than long-distance postal communications, and the arrival of an e-mail at its destination address may be more readily tracked."); *GE Transp. (Shenyang) Co., Ltd. v. A Power Energy Generation Sys., Ltd.*, 15 Civ. 6194 (PAE), 2015 U.S. Dist. LEXIS 158230, at *11 (S.D.N.Y. Nov. 23, 2015) (authorizing service via email on a Chinese national and his alter ego corporation).

Moreover, the Hague Convention specifies that it "shall not apply where the address of the person to be served with the document is not known." *See* Hague Convention, November 15, 1965, Article 1. Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361; *see also Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *5 ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff]."); *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *2 (email service authorized and the Hague Convention did not apply because, despite physical addresses having been provided to defendants' domain registrars, the actual addresses could not be confirmed as valid). In this case, Plaintiffs do not know the Foreign Defendants' actual addresses due to their efforts to conceal their whereabouts and operate anonymously through the Internet. Mustico Decl. ¶ 8.

2.   **Service of Process by Email is Reasonably Calculated to Provide Notice to the Foreign Defendants**

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the

federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted). "Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts." *Broadfoot v. Diaz*, 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000). As a result, courts have fashioned a range of alternative methods of service, including service by email. *See, e.g., PCCare247,* 2013 U.S. Dist. LEXIS 31969, at *18-20 (ordering service by email and Facebook); *Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (ordering service by sending summons and complaint to an email address previously used by defendant to communicate with plaintiff and to counsel in New York who had been in contact with defendant); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (ordering service by email and fax); *Williams v. Adver. Sex LLC*, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (ordering service by email and international registered and standard mail).

Email service on a defendant engaged in an illegal online business is appropriate and constitutionally acceptable in a case such as this where the plaintiff is unable to personally serve the defendant at a physical address and has shown that email is the most effective means of providing the defendant with notice of the action. *See Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"); *Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *6-7 (S.D.N.Y. June 12, 2015) (authorizing service via email where "where a defendant was . . . alleged to be an online China-based counterfeiting network linked to a functioning email address but which otherwise remained anonymous."); *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-cv-14628, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (same; noting that the

9

plaintiff's test email was not returned as undeliverable); *McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that service via email was appropriate where the defendants conducted their business online and relied on an email address to conduct their business); *Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (holding that Rule 4(f)(3) clearly authorizes service by email where defendant's address was unknown and emails sent using the addresses defendant provided to the domain name registrar did not bounce back).

"If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them." *Williams*, 231 F.R.D. at 487 (quoting *Broadfoot*, 245 B.R. at 721). Thus, email service and service via the Storefronts has the greatest likelihood of reaching e-commerce merchants, particularly the Foreign Defendants here who are adept at hiding their identity and location. *See Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.").

Accordingly, service on the Foreign Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims. Email will not only be effective in this case but will be the most reliable means of providing actual notice to the Foreign Defendants.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Alternate Service on Defendants Siew Yee Chew, Lynette K. Chew, Kok Kit Lau,

10

Akitrade Global Sdn. Bhd., Shein Wei Choo, Yumi Wee Keng Yee, Lew Moy, Lim Sei Haw, Liao Wei Hao, Jiao Leng, Zheng Xiaohong, Lin Zhen Wei, and Luo Zhihong.

DATED: February 2, 2018	Respectfully submitted,

By: */s/ Kerry M. Mustico*
Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel: (202) 480-2999
Fax: (866) 766-1678
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*